JAMES H. OLMSTEAD, JUDGE OF PROBATE *vs.* JOSEPH BRUSH
AND ANOTHER.

A *testator* gave by his will, among other legacies, $1,000 to his daughter
Sarah. He then gave all his real estate to his son Joseph, the devise con-
taining the following provision : " and I hereby direct that the legacies herein
before named shall be paid by my son Joseph." By a later clause he ap-
pointed his son Joseph his executor. Joseph had accepted the devise, but
had not paid the legacy. Held, in an action brought on the probate bond
against Joseph, for the benefit of Sarah, alleging as the breach the non-pay-
ment of the legacy to her, that the duty to pay the legacy rested on Joseph,
not as executor, but as devisee—the payment of the legacy constituting a
condition of the devise, the acceptance of which implied an assent to the
condition and a promise to pay the legacy ; for a breach of which promise
Joseph was liable in assumpsit, and not on his bond for the non-performance
of his duty as executor.

The executor had settled his administration account in the court of probate, and
in the account had been credited the amount of the legacy in question as
having been paid by him. Whether the judge of probate, after having thus
found the legacy to have been paid, could sustain an action on the bond for its
non-payment : *Quere.* And as to the effect of such an adjudication upon
the rights of the legatee : *Quere.*

In an action brought on a probate bond in the name of the judge of probate for
the benefit of a party interested, there can be no recovery of nominal dama-
ges for a technical breach of the bond by which the party for whose benefit
the suit is brought has not been injured.

ACTION on a probate bond, brought in the name of the
judge of probate, by Joel Wright and Sarah his wife, to re-
cover the amount of a legacy given to the said Sarah by the
will of Benjamin Brush, of which will the defendant Joseph
Brush was the executor.

The material portion of the will, which was executed on
the 27th day of April, 1839, was as follows :

" I give to my daughter Sarah the sum of one thousand
dollars.    *    *    *    *    *    *

" I give to my son Joseph the whole of my real estate, to
come into his possession at the decease of my wife, and I
hereby direct that the legacies herein-before named shall be
paid by my son Joseph, at the decease of my wife, and if any
of the legatees should be under age at the time of my wife's
decease, they are to have the interest on their several lega-

cies until they arrive at the age of twenty-one, and then to receive the principal.        *        *        *        *        *

"I do hereby constitute and appoint my son Joseph to be sole executor of this my last will and testament."

The testator died in 1847. The said Joseph accepted the trust of executor and gave bond for the faithful discharge of his duties as such. He also accepted the real estate devised to him. The debts and charges exceeded the whole amount of the personal estate, but there was sufficient real estate which came into the possession of the said Joseph as devisee to pay the same and also all the legacies given by the will. On the 29th of June, 1850, the said Joseph had settled his administration account in the court of probate, in which he had been credited the amount of this and the other legacies given by the will—the account referring to a schedule annexed, which schedule was signed by the said Joseph as executor, and to which was prefixed a statement as follows :—" The legacies ordered to be paid by the will of said Benjamin are as follows, and all have been paid, or arrangements made to pay them, with interest since the death of the widow, who died on the 15th of March, A. D. 1849."

The case was tried to the court, which rendered judgment for the plaintiff, and the defendants moved for a new trial. Various other facts were presented by the motion which become unimportant in the view of the case taken by this court. It was found that a technical breach of the bond had been committed by the neglect of the executor to return the inventory within the time prescribed by law, but that the parties for whose benefit the present suit was instituted were not injured thereby.

*Hawley* and *Ferris*, in support of the motion.

The defendants clearly can not be liable on the bond for the non-payment of this legacy, unless the legacy was charged on the land, and in such a way as to make it the duty of the executor to pay it. The bond is given only to secure the performance of the duties of the executor as such, and

any neglect of duty, not affecting him as executor, can not constitute a breach of the bond. Now, while we admit that it was the duty of Joseph Brush, the defendant, to pay this legacy, yet it was a duty devolving on him, not as executor, but as devisee under the will. The will gives him the real estate, and makes it a condition of the devise that he pay this legacy. The obligation to pay it therefore rests on him only as devisee, and becomes an obligation only by force of his accepting the devise; such acceptance being equivalent to a promise to perform the condition. He being liable therefore only by force of this implied promise, the breach of the promise is not a breach of his bond, nor in any manner a breach of his duty as executor, and the remedy for the recovery of the legacy is by an action of assumpsit founded on this implied promise. It is to be observed that Joseph is not directed as executor to pay the legacy, but the will speaks of him, in connection with the devise and the legacy, only as " my son Joseph," and the direction is that it " be paid by my son Joseph." *Lord* v. *Lord*, 22 Conn., 595. Even if the legacy is to be regarded as charged upon the land, which we do not admit, yet it does not follow that the non-payment of it is a breach of the bond. The present statute, under which an executor in such a case can get an order from the probate court for the sale of the land, was passed since this will was made, and by its terms can not apply to it. The court of probate having no power to order the sale of the land to pay the legacy, the land can not be assets in the hands of the executor for that purpose. *Swift* v. *Edson*, 5 Conn., 535. *Lord* v. *Lord*, supra. The adjudication of the probate court, in allowing to the executor the amount of this legacy as paid, is conclusive. The conclusiveness of its action depends on whether it had jurisdiction. Have then our probate courts jurisdiction in the matter of legacies? They have the same jurisdiction in testamentary matters as the Ordinary court in England, which has jurisdiction of legacies. Fonbl. on Eq., book 4, part 1, ch. 1, § 1. 2 Wms. Exrs., 1779. *Judson* v. *Lake*, 3 Day, 318. *Goodrich* v. *Thompson*, 4 id., 220. *Bailey* v. *Strong*, 8 Conn., 280.

*Beach* v. *Norton*, 9 id., 182. *Atwater* v. *Barnes*, 21 id., 237, 244. The account rendered by the executor can not be regarded as an admission of assets in his hands, and be made therefore a ground of liability, for the legatee has no claim on those assets even if they be proved to exist, but only on Joseph Brush personally, or perhaps on the specific land devised to him. As to the technical breach of the bond in the neglect to file the inventory in season, the defendants can not be subjected to nominal damages therefor in the present suit, because the plaintiffs in interest have not been damnified thereby.

*Dutton* and *Curtis*, contra.

The legacy is charged on the real estate. The rule is, that where a legacy is not expressly so charged, yet it will be held to be, wherever there is a manifest intention to that effect, however expressed. *Swift* v. *Edson*, 5 Conn., 535. *Gridley* v. *Andrews*, 8 id., 1. *Matthewson* v. *Sanders*, 11 id., 144. We say that here is such a manifest intent. It is very clear that Joseph Brush could not take the benefit of the devise and yet not be obliged to pay the legacy, and it is clear that if he had declined to accept the devise the legatee would have been able, in a court of chancery, to avail herself of the land for the payment of her legacy. This makes it clear that the legacy was intended to be charged on the real estate. And, it being thus charged, it was the duty of the executor to pay it. The will gives the real estate to Joseph, and directs him to pay the legacies, and makes him executor. The land thus becomes assets in his hands for the purpose of paying the legacies. It can not be necessary for him to go into a court of probate for an order to sell the land, since the land is given to him and he already has the power to sell it. It makes no difference therefore that the statute empowering the courts of probate to make an order for the sale of such land was passed since the will was made and can not be applied to it, as the executor does not need the aid of the court for that purpose. The land thus being wholly within his control, and being designated by the will

as the property that was to pay the legacy, becomes assets in the hands of the executor; and where there are assets for the payment of a legacy, its non-payment is a breach of the bond. Assumpsit will lie where there are assets, and an action on the bond wherever assumpsit would lie. *Adams v. Spalding,* 12 Conn., 350, 357. See also *Goodwin v. Chaffee,* 4 Conn., 163. If the land would not otherwise be regarded as assets, yet the executor will be held to have made it such, and to have admitted that he has assets in his hands for the purpose of paying the legacies, by the account which he rendered to the court of probate, in which he certified that, so far as the legacies had not been paid, he had made arrangements to pay them. The settlement of this administration account, so far as, by crediting the executor with the amount of the legacies, it treats them as paid, does not bar the legatee of her suit for the legacy, when in fact it has not been paid. Such an adjudication is wholly between the executor and the estate—not between the executor and the legatees. It clearly could not be claimed that, if debts due from the estate were allowed in the account as having been paid, the creditors were barred of all right to recover them if not paid. So far as the right of a legatee to his legacy is concerned, the court of probate has no jurisdiction of the matter. The legatee does not go before that court, but before a court of common law jurisdiction to enforce his claim, by an action of assumpsit or suit on the bond. *Edmonds v. Canfield,* 8 Conn., 87. *Strong v. Strong,* id., 408. *Wattles v. Hyde,* 9 id., 10, 13. *Smith v. Brush,* 10 id., 167. *Isaacs v. Stevens,* 13 id., 499. *Atwater v. Barnes,* 21 id., 243. As to the technical breach of the bond admitted, there should be a recovery of nominal damages. *Warren v. Powers,* 5 Conn., 374.

ELLSWORTH, J. In deciding this case, we have no occasion to consider the question, which was so much discussed in the argument, as to the effect, upon the rights of third parties, of a settlement of an administration account, in an action brought on the probate bond. We prefer to place our

decision on the ground, that, in such a case as the present, no action at all will lie on the bond; though we do not mean to say or intimate that there is not another and adequate remedy.   *Clyde* v. *Simpson,* 4 Ohio S. R., 445.

Assuming that the plaintiffs in interest have a well founded claim under the will of Mr. Brush, the inquiry arises, will the non-payment of the claim subject the executor and his surety to a suit on the executor's bond ?   We think it will not.   The liability which is disclosed by the facts, appears to us to be one which does not affect the executor as such, but which grows out of and depends upon other and different considerations than those which determine the obligations and duties of an executor.

It must be admitted by every one, that an executor's bond covers only the proper duties of an executor—duties which he owes to the estate he represents; which are, first, to pay the debts of the estate if there are sufficient assets, and if there are not enough, to obtain an order from the court of probate to sell real estate to supply the deficiency.   Beyond this, the executor, as such, has nothing to do with the disposition of the real estate.   The personal estate, as the title to it vests in himself, he may if he pleases proceed at once to sell, and with the avails pay off the debts ; but the real estate does not vest in him, and he can not sell it without an order from the probate court.   When such an order is duly obtained he can make a sale conformably to it, and confer a good title upon the purchaser.   This is the general duty of an executor.   If there remains any personal estate after the payment of debts, and there are legacies, these legacies must be paid in full, or to the extent of the personal property ; and if there be no such property left, or not enough, then, if the legacies are charged on the real estate, the court of probate may, (since the recent statute giving the power,) make a decree, on proper application, for the sale of a sufficient quantity of it to pay the pecuniary legacies.   Until this statute was passed, equity alone possessed the power.   Nor can either court, at this time, exercise the power in the case of a will made before the date of the statute, unless, by the lan-

guage of the will, the legacy is made a charge on the real estate. *Gridley* v. *Andrews*, 8 Conn., 1. *Clyde* v. *Simpson*, 4 Ohio, S. R., 445. And, in any event, it is not easy to see how the executor's bond is broken, by the executor's not making sale of land to pay a legacy, which the judge finds has been satisfied, and for which therefore he can make no order of sale. If indeed the land be charged, and the land thus charged be given to the executor himself, we think the remedy must be in some other form than an action on the bond.

We then look at the language of the will, to ascertain who or what is charged with the payment of this legacy. Its language is, " I give to my son Joseph the whole of my real estate, to come into his possession at the decease of my wife, and I hereby direct that the legacies herein-before named, shall be paid by my son Joseph at the decease of my wife, &c." In *Lord* v. *Lord*, 22 Conn., 602, we held that words in a will like these—to wit: " I will, order and direct that my nephew William M. Lord pay Sarah L. Marshall, &c."— created a personal charge on him to pay the legacy, amounting to about $2,000, and that he should not charge the payment of it against the estate in his hands as executor. We held it to be a private personal duty, founded on his election to accept and enjoy under the will a large and ample bequest of personal and real estate. See also *Clyde* v. *Simpson*, supra.

We find in the books a class of conveyances, leases, &c., by deeds poll, in which some clause is inserted by the grantor, imposing a duty of some kind on the grantee, which, if accepted, is held to create an implied obligation that the grantee is to comply with the condition. Not that the grantee covenants to do it, for the words are the words of the grantor, but if the grantee accepts the deed he assents to the condition in it, and becomes liable on an implied assumpsit to keep and perform it. Such is the English law as stated in Platt on Covenants, pp. 10, 18. So it is held in *Trustees of Hocking County* v. *Spencer*, 7 Ohio, 493; also in *Goodwin* v. *Gilbert*, 9 Mass., 510, *Burnett* v. *Lynch*, 5 B. & C. 589, and *Parish* v. *Whitney*, 3 Gray, 516. In the last case

the court say : " The question is whether the clause in the deed of Putnam to Tinker creates an incumbrance upon the land. It is quite clear it is not a reservation out of the estate granted. The whole estate passed by the deed. It is not a condition upon which the estate is to be held, and for breach of which an entry might be made by the grantor. It is not declared to be a condition, nor is any right of entry reserved. It is not a covenant running with the land or otherwise. It is but a personal agreement of the grantee, made as part of the consideration of the grant and evidenced by his acceptance of the deed, which may bind him and his legal representatives, but does not affect the estate." In *Plymouth* v. *Carver*, 16 Pick., 183, the court held that where a town granted certain land on condition that the grantee should give a bond to maintain a certain portion of the highway, and the bond was given but not kept and performed, that the obligation in the bond was not a covenant running with the land, but the land had vested absolutely. In *Hinsdale* v. *Humphrey*, 15 Conn., 434, this court held that words in a deed poll, imposing a certain duty on the grantee, which deed he had accepted, did not make him liable in covenant to perform the duty, but that he would be liable on an implied promise in assumpsit. The opinion given by Hinman, J., contains a full and able review of all the cases; and we refer to it as expressing the present views of this court. See also the cases of *Thompson* v. *Thompson*, 4 Ohio, 333, and *In re McCracken's Estate*, 29 Penn., 427.

We will not pursue the subject further, being satisfied that the plaintiffs in interest have mistaken their remedy. For the mere nominal breach of the bond which is claimed to have been committed, as the law is now settled, as it is not one affecting the plaintiffs, there can be no recovery for nominal damages or for costs. *Taylor* v. *Mygatt*, 25 Conn., 184.

We advise a new trial.

In this opinion the other judges concurred.

New trial advised.