# CHARLESTON.

HOGG *v.* BROWNING *et al.*

## Submitted June 8, 1899—Decided November 18, 1899.

1. LEGACY—*Will—Charge on Land.*
   Though legacies do not stand upon as high ground as debts, yet, if the personal fund be inadequate, or if there are expressions in a will tending to show that the testator had the land in his mind for their payment, they are a charge on the land devised. (p. 23.)

2. LEGACY—*Charge on Land.*
   Whether legacies are a charge on land devised is a question of intent of the testator. (p. 23.)

3. CHARGE ON REALTY—*Legacy—Will.*
   Realty is not chargeable with legacies unless the intent to charge it is expressed in the will, or appears by implication from it. (p. 26.)

Appeal from circuit court, Brooke County.

Action by Abba E. Hogg against Henry Browning and others. From the decree, complainant appeals.

*Affirmed.*

W. W. ARNETT and PALMER & PALMER, for appellant.

R. H. COTTON, for appellees.

BRANNON, JUDGE:

Abba E. Hogg, widow and sole legatee and devisee of William Hogg, deceased, and executrix of his will, brought a chancery suit in the circuit court of Brooke County, in her own right and as executrix, against Hannah Browning and others, stating in her bill that her husband died considerably indebted, owning certain lands, and that it would be necessary to sell some of the lands to pay his debts, and that she was sole devisee under his will of those lands, and stating that among the debts was one arising out of a legacy given by George Hogg's will to Hannah Browning and her children, of two thousand eight hundred dollars, which,

with other legacies, George Hogg's will directed to be paid by his three sons, William, George W., and John F. Hogg; and the bill stated that it was suggested that this legacy, in addition to being a personal debt upon William Hogg, was by reason of the will of his father a charge on the land devised to him; and the bill asked that the will be construed, and that the court determine whether the Browning legacy was a charge, and that the debts of her husband be ascertained, and the land be sold, giving her her rights as widow. The court decreed that Hannah Browning's legacy was a charge, under her father's will, on the land by it given to William Hogg, for his portion of it, having preference over other debts, and the dower of Abba E. Hogg as widow of William Hogg, and giving her a gross sum for dower after payment of liens. She appealed from this decree.

The only question of any import in the case is whether the Browning legacy is a charge on the land. The will of George Hogg, Sr, does not in words charge it, but I think it clearly does so by implication. The law as to charge of legacies on land as expounded by the Virginia and West Virginia cases is very well settled. " Real estate is not chargeable with pecuniary legacies unless the intention so to charge is expressed in the will or such intention appears by implication." *McGlaughlin* v. *McGlaughlin's Legatees*, 43 W. Va. 226 (27 S. E. 378); *Thomas v. Rector*, 23 W. Va. 26. "Whether legacies are a charge upon real estate is a question of intention on the part of the testator." *Read* v. *Cather*, 18 W. Va. 263. *Downman* v. *Rust*, 6 Rand. (Va.) 587 lays down that if "the personal fund be inadequate or there be expressions in a will tending to show that the testator had the land in his mind the court will make them (legacies) a charge on the land rather than they shall go unpaid." 2 Lomax Ex'rs 171 says: "Roper after reviewing the cases in which legacies were charged by implication has observed that they afforded solid ground for inferring the intention of the testator to charge the real fund or its produce with legacies in aid of the personal estate. The real property was devised and there were expressions connected with that devise which afforded a reasonably plain inference that the land or its produce should be taken subject to legacies. But where the intention to subject

the real estate to legacies is merely probable or conjectural, and there are no expressions to charge, except such as are capable of being otherwise satisfied, a court of equity will not on conjecture or private persuasion, affect the real estate with payment of legacies. Where, indeed, an unprovided child or creditors are the persons endeavoring to establish the charge, the court will incline in their favor, if the inference of intent to charge be dubious; but, where the question is between mere voluntary legatees and the heir or the devisee, the court will require satisfactory conviction of the intent to charge the realty with legacies." 13 Am. & Eng. Enc. Law, p. 111, is the same. These extracts express the law upon the important and frequently arising question of charges by implication of legacies upon lands. With the light shed by them, let us look at George Hoggs' will: "(1) I appoint Robert M. Wells my executor. (2) I direct that my three sons, hereinafter named, pay all my just debts and funeral expenses. (3) I give to my wife, Sallie Hogg, all my personal property in and about my house, together with my horse, buggy, and harness, also the use of the house in which I now reside and live, during her natural lifetime, for the use and comfort of her and my daughter Elizabeth. (4) I direct that my three sons, George W., William, and John F. Hogg, pay to my wife, Sally, five hundred dollars per year during her natural lifetime. (5) I give my son George W. Hogg two parcels or tracts of land, known as the 'Mill Property' and 'Trimble Farm.' (6) I give to my son William the homestead farm on which I now reside. (7) I give to my son John F. Hogg my farm known as the 'Brady Farm.' (8) I further direct that my three sons, namely, George W., William, and John F. Hogg, in consideration thereof, pay the following legacies and bequests, namely: To my daughter Lucy Cheffly, one thousand dollars; to my daughter Hannah Browning, twenty-eight hundred dollars; to my daughter Elizabeth Hogg, four thousand dollars; to my daughter Sarah A. McCord, three thousand dollars; to my granddaughters Sally, Ame, and Myra Wells, children of my daughter Harriet, now dec'd, fifteen hundred dollars. * * * (14) I direct that the county court appoint three disinterested freehholders to appraise the three proportions of land I have given to my sons, in order that they

may each pay their due proportion of the debts, dues, demands, legacies, and bequests herein and above mentioned." I first call attention to a distinction important to be regarded. Where the testator gives pecuniary legacies, and devises land to others, the law presumes, unless the intention is clear otherwise, that he intends the legacies to be paid out of his personalty. The personalty is the primary fund for debts and legacies. But where he gives land to a devisee, and requires him to pay a legacy, there can be no presumption that the testator intended the devisee to pay legacies out of the personalty, rather than realty,—to make it a mere personal obligation on the devisee, rather than a charge on the land he derived from the testator. Indeed, it should be a presumption the other way;. that is, he meant the land to be good for the legacy, because he obliged the devisee to pay the legatee. *Carter* v. *Worrel* (N. C.) 2 S. E. 528. This will directs the three sons to pay all debts. It then gives them lands, and in immediate connection with the devising clauses, and in language referring to them, says, "In consideration thereof" the sons shall pay particular legacies. He made no provision for their payment out of personalty, if there was any besides that given his wife, and it seems he owned no land besides that given his sons; and as he surely expected all these legacies, amounting to twelve thousand three hundred dollars, besides the annual legacy of five hundred dollars to his wife, to be paid, we may ask, how could he expect them to be paid, except out of the land? The words "in consideration thereof" (that is, in consideration of the gifts of lands to his sons, they should pay), alone show plainly, under the case referred to in 6 Rand. (Va.), that the testator, having no personalty, but requiring his sons to pay in consideration of devises, "had the land in mind" for their payment,—in fact, looked only to the land. Next add the force of the clause requiring an appraisement of the value of the lands to show the proportion "of the debts, dues, demands, legacies, and bequests herein mentioned." It tells us that the testator meant each son to pay proportionately to the land he received, thus making it the measure, basis, and consideration of the obligation of his sons to pay. And under the text cited from Lomax these daughters are not mere strangers, but

daughters, having as strong claim on him for payment of what he gave them as had the sons to retain their lands; and shall they keep his lands, valued at thirty-nine thousand five hundred dollars, and the daughters go unprovided for and unpaid? Did George Hogg intend a result so unjust and disastrous to his daughters, which might entail upon them abject poverty and want? Law and common sense say that he did not. Therefore the circuit court properly held that Mrs. Browning's legacy was a charge on the land devised to William Hogg.

The claim in Mrs. Hogg's petition for appeal, that she was not given land in kind for dower, instead of money, is utterly untenable, when we see from her bill that she consented to a sale of her husband's land, and to receive "her dower interest in money out of the amount realized from the sale." Her point that her age was fixed at forty-two for assessing her dower interest in money becomes nil when we see that she was before the commissioners, gave a deposition (which she has not inserted in the record), and the parties agreed her age to be forty-two as the commissoners report, and she did not except. She was given her interest after payment of the legacy to Mrs Browning, and other liens having preference over her dower, and this was no error. Decree affirmed.

*Affirmed.*